FOR OFFICIAL PUBLICATION

# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cr-0037 |
| ) | |
| AUBREY FRETT, ) | |
| ) | |
| Defendant. ) | |
| ) | |

ATTORNEYS:

**Gretchen C.F. Shappert, United States Attorney**
**Everard E. Potter, AUSA**
**Nathan Brooks, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Richard Coughlin, Federal Public Defender**
**Kia Danielle Sears, AFPD**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
    *For Aubrey Frett.*

## MEMORANDUM OPINION

**MOLLOY, J.**

**BEFORE THE COURT** is Aubrey Frett's motion for a judgment of acquittal. Frett contends that there was insufficient evidence wherein a reasonable jury could find him guilty beyond a reasonable doubt on Count One of the Indictment charging him with possession of a firearm with an obliterated serial number. Because the Court concludes that there was insufficient evidence for a reasonable jury to find that Frett knew that a metal plate containing the serial number had been removed from the firearm, the Court will grant the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2018, officers with the Virgin Islands Police Department ("VIPD") attempted to arrest Frett on a warrant at a location in St. Thomas, U.S. Virgin Islands. Frett fled, and the officers observed him throw away a black object. Frett was eventually apprehended. A search of Frett's person revealed that he was carrying marijuana and cocaine. After searching the area where officers observed Frett throw the object, officers discovered a handgun and magazine.

On March 21, 2019, the Grand Jury returned a four-count indictment (the "Indictment") charging Frett with the following offenses: (1) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); (2) possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1); (3) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and (4) possession of a firearm during drug trafficking in violation of 18 U.S.C. § 924(c).

On January 23-24, 2020, this matter was tried before a jury. With respect to the handgun recovered by the VIPD, officers testified that it was a 9mm Glock. The particular make and model of that firearm normally has a serial number displayed in three locations: First, a "metal plate" bearing the firearm's serial number is affixed to the lower receiver. *See Det. Velazquez Trial Test.*, ECF No. 95 at 81:22-23, 82:3. Second, the serial number is stamped into the upper receiver. Third, the serial number is stamped into the barrel. On the Glock recovered by the VIPD, the stamp on the lower receiver had been entirely removed. The serial numbers on the upper receiver and barrel, however, were both unmarred and entirely legible. *See Det. Velazquez Trial Test.*, ECF No. 95 at 91:23-25, 106:2-8.

At the close of the Government's case, Frett moved for a judgment of acquittal on all counts. The Court denied Frett's motion with respect to Counts Two through Four and took Frett's motion under advisement with respect to Count One, possession of a firearm with an obliterated serial number. Thereafter, Frett rested without presenting any further witnesses or evidence.

On January 24, 2020, the jury returned a verdict of guilty on Counts Two and Three—the two drug charges. The jury was unable to reach a decision on Counts One and Four—the two firearms charges. The Court, thereafter, declared a mistrial with respect to Counts One and Four.

On March 13, 2020, Frett filed a motion requesting that the Court issue a decision on his motion for a judgment of acquittal on Count One, which the Court took under advisement at the close of the Government's case. (ECF No. 97.) Frett argues that, because the firearm in this matter still bore two unmarred serial numbers, it did not have a "removed, obliterated, or altered" serial number within the meaning of 18 U.S.C. § 922(k). Alternatively, Frett argues that there was insufficient evidence to establish that he knew the firearm's serial number was removed, obliterated, or altered.[1]

## II. LEGAL STANDARD

A judgment of acquittal is appropriate under Federal Rule of Criminal Procedure 29 ("Rule 29") if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable

---

[1] On May 22, 2020, the Government moved to dismiss Counts One and Four without prejudice. (ECF No. 106). On June 22, 2020 (ECF No. 109), Frett filed a Notice with the Court requesting that the Court first rule on the pending motion for judgment of acquittal before ruling on the Government's motion to dismiss. Frett, nonetheless, requests that the Court dismiss the Counts with prejudice.

doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (explaining that district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence'" (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001))).

A finding that there is insufficient evidence to support a conviction should be "'confined to cases where the prosecution's failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984) ("Our task is not to decide what we would conclude had we been the finders of fact; instead, we are limited to determining whether the conclusion chosen by the fact finders was permissible.").

The government may sustain its burden entirely through circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). A motion for a judgment of acquittal should be granted when there is a "total absence of evidence that [the] defendant had any connection" with the crimes alleged and proved. *United States v. Darrell*, 629 F.2d 1089, 1091 (5th Cir. 1980) (conviction reversed with directions to enter judgment of acquittal in mail fraud case, noting there was little Fifth Circuit precedent saying what evidence would permit an inference of the defendant's identity).

### III. DISCUSSION

#### A. *Section 922(k) Applies to Firearms Bearing Multiple Serial Numbers*

Section 922(k), title 18, of the U.S. Code ("Section 922(k)") provides:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(k). There is no dispute that *one* of the serial numbers on firearm in this matter was removed. The question before the Court is whether the removal of one serial number is sufficient to sustain a conviction under Section 922(k) when the firearm in question normally bears multiple serial numbers.

"It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Philadelphia Newspapers, LLC,* 599 F.3d 298, 304 (3d Cir. 2010). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992) (citations and quotation marks omitted). When the statutory language is ambiguous, however, Courts may attempt to resolve the ambiguity by reference to the legislature's overall intent and purpose in enacting the statute. *See United States v. Introcaso*, 506 F.3d 260, 267 (3d Cir. 2007) (explaining that, when the plain language of a statute is ambiguous, "[w]e next look to statutory purpose to the extent we can discern it."); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) ("'[W]hen technological change has rendered its literal terms ambiguous, a law must be

construed in light of its basic purpose.'" (original alterations and internal quotation marks omitted)).

The Court is unaware of any precedential appellate authority addressing the operation of Section 922(k) with respect to firearms with multiple serial numbers. A similar provision in the sentencing guidelines, Section 2K2.1(b)(4), provides for a sentencing enhancement when a defendant is convicted of a crime involving a firearm that "had an altered or obliterated serial number." *See* U.S.S.G. 2K2.1(b)(4). Several courts have held that this enhancement applies when a firearm has multiple serial numbers, only one of which is altered or obliterated. Those courts placed heavy weight on Section 2K2.1(b)(4)'s use of "an."[2] As the Sixth Circuit explained,

> "in common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'" *United States v. Alabama,* 778 F.3d 926, 932 (11th Cir. 2015). For example, if a speaker says, "Give me *an* apple," most reasonable listeners would interpret that as, "Give me *any* apple," or, "Give me *just one* apple." Read in that fashion, the § 2K2.1(b)(4)(B) enhancement applies either when *any* serial number on a gun has been altered or obliterated or when *just one* serial number has been altered or obliterated.

*United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) (alterations omitted).

Unlike Section 2K2.1(b)(4), Section 922(k) addresses the obliteration or alteration of "*the* importer's or manufacturer's serial number." *See* 18 U.S.C. § 922(k) (emphasis added). This language seems to contemplate a situation in which a firearm has only one serial

---

[2] *See United States v. St. Hilaire*, 960 F.3d 61, 65 (2d Cir. 2020) ("The wording references '*an*' altered or obliterated serial number; it 'does not require that *all* of the gun's serial numbers be so affected.'" (quoting *United States v. Serrano-Mercado*, 784 F.3d 838, 850 (1st Cir. 2015))); *United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020) (same); *United States v. Jones*, 927 F.3d 895, 897 (5th Cir. 2019) (same); *United States v. Thigpen*, 848 F.3d 841, 845-46 (8th Cir. 2017) (same); *United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) (same); *Serrano-Mercado*, 784 F.3d at 850 (same).

number. Indeed, the relevant regulations only require manufacturers and importers to place one serial number on a completed firearm. *See* 27 C.F.R. §§ 478.92, 479.102. And in that context, Section 922(k) is unambiguous: It is illegal to remove the only serial number on a firearm. The language is ambiguous, however, in its application to firearms with multiple serial numbers.

Congress's intent in enacting Section 922(k) was "to assist law enforcement by making it possible to use the serial number of a firearm recovered in a crime to trace and identify its owner and source." *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010). Using "[f]irearms without serial numbers" helps "those engaged in illicit activity because the absence of serial numbers helps shield recovered firearms and their possessors from identification. Their prevalence, therefore, makes it more difficult for law enforcement to gather information on firearms recovered in crimes." *Id.* To that end, Section 922(k) "criminaliz[es] the possession of firearms which have been altered to make them harder or impossible to trace." *Id.* at 101; *see also United States v. Adams*, 305 F.3d 30, 34 (1st Cir. 2002) ("Yet anyone can see what Congress was getting at in the statute. . . . [T]he statute aims to punish one who possesses a firearm whose principal means of tracing origin and transfers in ownership—its serial number—has been deleted or made appreciably more difficult to make out.").

In relevant part, 18 U.S.C. § 921 ("Section 921") defines a "firearm" as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" or "the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3)(A)-(B). This definition recognizes that "the component parts" of many firearms "are interchangeable." *See St. Hilaire*, 960 F.3d at 65. "[M]atching serial numbers [on these parts]

assure[s] reliable identification of the firearm as a whole, and a single altered or obliterated serial number renders it more difficult to trace." *Id.* Construing Section 922(k) to apply to firearms that have only one of several serial numbers removed would "facilitate tracking each component that bears a serial number" and "serve as a deterrent to tampering, even when incomplete," thereby furthering the intent of the Section 922(k). *See Serrano-Mercado*, 784 F.3d at 850 (discussing Section 2k2.1(b)(4)).

Though in a nonprecedential opinion, such was the construction given to Section 922(k) by the Sixth Circuit in *United States v. Mixon*, 1998 U.S. App. LEXIS 25816, 1998 WL 739897 (6th Cir. Oct. 8, 1998). In that case, the defendant was convicted of possessing a firearm with an obliterated serial number. On appeal, the defendant argued that the firearm's serial number was not "removed, obliterated, or altered" because, "neither the entire serial number nor every appearance of the serial number on the weapon was obliterated." *Id.* at *3. The Sixth Circuit rejected this argument, explaining that "[t]he fact that the entire serial number or other indications of the serial number on the weapon were not obliterated fails to negate the fact that a portion of the serial number had been obliterated." *Id.*

In light of the legislative intent behind Section 922(k), the Court finds the Sixth Circuit's opinion in *Mixon* persuasive. Accordingly, the Court holds that a firearm bearing multiple serial numbers, only one of which is removed, "has had the importer's or manufacturer's serial number removed, obliterated, or altered" within the meaning of Section 922(k).

### B. There was Insufficient Evidence for a Reasonable Jury to Conclude that Frett Had Knowledge that the Serial Number Was Removed

The Court will now address Frett's argument that the Government submitted insufficient evidence for a reasonable jury to conclude that he knew that the firearm had a serial number removed. To sustain a conviction under Section 922(k), the government must prove that the defendant knowingly possessed a firearm with a removed, obliterated, or altered serial number. *See* 18 U.S.C. § 922(k). A conviction thus requires proving "not only knowing possession of the firearm, but also knowledge that the serial number on the firearm had been obliterated." *United States v. Haywood*, 363 F.3d 200, 206 (3d Cir. 2004); *see also United States v. Moore*, 54 F.3d 92, 101 (2d Cir. 1995) ("The defendant must know that the firearm had an altered serial number."). "[G]enerally, 'knowledge of defacement of the serial number may be inferred where the defendant has possessed the gun under conditions under which an ordinary man would have inspected it and discovered the absence of a serial number.'" *United States v. Haile*, 685 F.3d 1211, 1220 (11th Cir. 2012) (quoting *United States v. Sullivan*, 455 F.3d 248, 261 (4th Cir. 2006)).

Here, the jury heard evidence that VIPD officers pursuing Frett saw him throw an object and that officers later recovered a Glock handgun and loaded magazine near where Frett had thrown the object. Swabs of the magazine and the Glock's barrel, grip, and trigger tested positive for the presence of Frett's DNA.

Detective Richard Velazquez ("Velazquez")—a VIPD officer with approximately 28 years' experience and who counts firearms instructor as among his duties in that role— testified that "Glocks . . . have a stamp on the bottom [of the lower receiver] which has the serial number." ECF No. 95 at 81:23-24. Velazquez examined the Glock in this case shortly

after Frett's arrest and testified that he "saw that the metal plate that's on the receiver of the firearm had been removed." *Id.* at 82:3-4. Velazquez also testified that the serial number was clearly visible in two other locations on the firearm, the barrel and upper receiver. *Id.* at 91:23-25, 106:2-8.

Nicholas Robichaux ("Robichaux")—an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") who primarily investigates federal firearm violation—testified that Glocks generally have "a little metal plate on the bottom [that] . . . has the serial number on it." *Id.* at 164:12-14. Robichaux testified that the plate is "very small" and approximately "half an inch in length." *Id.* at 164:19. On the Glock in this case, the plate was missing. Where it would normally be attached, there was "a vertical line" that was "a little more shiny than the rest" of the gun. *Id.* at 164:25-165:1. The jury was also shown pictures of the Glock that were consistent with the testimony of Velazquez and Robichaux.

As a general rule, cases finding permissible the inference that a defendant knew the gun he possessed had an obliterated serial number have involved one of two circumstances. First, such an inference is permissible where the firearm in question bore no legible serial number at all. *See United States v. Hrobowski*, 237 F. App'x 108, 109 (7th Cir. 2007) ("A firearms expert determined that all three serial numbers on the handgun had been intentionally obliterated."); *United States v. Mitchell*, 229 F. App'x 153, 154 (3d Cir. 2007) ("One of the guns from inside the couch, a Ruger .45 caliber pistol, was missing *its* serial number." (emphasis added)); *United States v. Thornton*, 463 F.3d 693, 699 (7th Cir. 2006) (where "*the* serial number" was obliterated (emphasis added)); *United States v. Moore*, 54 F.3d 92, 101 (2d Cir. 1995) ("A rational juror could also conclude that when Moore distributed guns to members of the organization he had inspected them and was aware that

they lacked serial numbers."). Second, the inference is permissible when the firearm bore obvious physical evidence of a serial number's intentional obliteration, such as scratching, gouging, or other conspicuous markings or disfigurement. *See United States v. Garcia-Hernandez*, 803 F.3d 994, 999 (8th Cir. 2015) ("[T]he serial number was *visibly* scratched out, as apparent in the photo exhibit at trial." (emphasis in original)); *United States v. Cobbs*, 233 F. App'x 524, 536 (6th Cir. 2007) ("The evidence also established that the scraped-down serial number was located on the back of the handle of the firearm, in the plain view of anyone who handled it."); *United States v. Mitchell*, 229 F. App'x 153, 154 (3d Cir. 2007) ("Where the serial number should have been, there was visible discoloration due to the gouging or grinding necessary to remove the number."); *United States v. Nesmith*, 29 F. App'x 681, 685 (2d Cir. 2002) (discussing testimony tending to show that "the extent of the obliteration was such that an individual could not handle the gun and not notice the obliteration").

Here, the jury heard evidence that "a vertical line" was on the underside of the Glock, which was just "a little more shiny than the rest" of the gun. *See* ECF No. 95 at 164:25-165:1. This is a far cry from the type of conspicuous scratching and gouging generally found to support an inference that a defendant knew a serial number was defaced. Moreover, the Glock still bore two clearly visible serial numbers. Looking at the evidence in a light most favorable to the prosecution, the United States only established that one iteration of the Glock's serial number was missing through the testimony of two law enforcement officers: one, a firearms instructor with the VIPD, the other, an ATF agent who specializes in enforcing federal firearms laws. Even if Frett had knowledge that a plate was missing from the receiver, this does not demonstrate that he knew that the plate had a serial number imprinted on it or

that a serial number was removed. *Cf. United States v. Johnson*, 381 F.3d 506, 510 (5th Cir. 2004) (opining that "even if a person like Johnson, with his 'street smarts' about this category of handguns, could conceivably have noticed the presence of . . . scratches on the receiver of the gun during either of [two] fleeting, no-light or low-light instances [during which he observed or handled the gun], mere awareness of the scratches can support no greater jury inference than that the presence of scratch marks in that location on that pistol should give rise to a generalized suspicion that the serial number might have been tampered with or even altered. That is a far cry from specific knowledge of actual obliteration."). Moreover, there was a total absence of evidence regarding Frett's level of expertise or familiarity with firearms or that he knew or should have known that the firearm contained a metal plate beneath the frame that contained a third serial number. Any conclusion to the contrary would require a reasonable jury to impermissibly pile inference upon inference: first, that Frett knew that a plate was missing from the firearm and second, that the missing plate contained a serial number. Under these circumstances, the Court cannot conclude that the inference that Frett knew about the Glock's missing serial number is one a rational jury could make.

In support of its opposition to Frett's motion for a judgment of acquittal, the United States cites two cases: *United States v. Naranjo-Rosario*, 871 F.3d 86 (1st Cir. 2017) and *United States v. Thornton*, 463 F.3d 693 (7th Cir. 2006). In *Naranjo-Rosario*, the only detail the First Circuit provided about the nature of the firearm involved in that case was that it was "a Glock pistol with an obliterated serial number." *See* 871 F.3d at 91. The First Circuit held that the jury could have inferred that the defendant possessed and handled the firearm and "therefore must have seen that the [serial] number had been obliterated." *Id.* at 95. The

firearm in *Naranjo-Rosario* had an obliterated serial number, unlike the firearm in this case. There is also no indication whether the firearm in *Naranjo-Rosario* had serial numbers in two other visible locations. As such, the Court does not believe that *Naranjo-Rosario* offers support either for or against the position of the United States. As for *Thornton*, police found a handgun in the defendant's car that "had *its* serial number obliterated." 463 F.3d at 696 (emphasis added). At the very least, the use of "its" implies that the firearm involved in that case bore only one serial number, placing it squarely within the two circumstances discussed above. *Cf. United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) (explaining that "*one of the* serial numbers on [the defendant's] gun was altered or obliterated" (emphasis added)). Accordingly, the Court finds these two cases inapposite to the facts of this case and will grant Frett's motion for a judgment of acquittal on Count One.

## IV. CONCLUSION

Based on the testimony of several witnesses at the trial, the firearm at issue in this case ordinarily contained serial numbers on three different locations. The fact that the firearm had visible, unaltered serial numbers on two of the three locations does not preclude a prosecution for a violation of 18 U.S.C. § 922(k). However, the Government presented insufficient evidence for a reasonable jury to conclude that Frett knew, or had reason to know, that the small metal plate containing the third serial number on the firearm was removed. For this reason, the Court will grant Frett's motion for a judgment of acquittal and enter a judgment of acquittal on Count One of the Indictment. An appropriate judgment follows.

**Dated:** October 2, 2020              /s/ *Robert A. Molloy*
                                        **ROBERT A. MOLLOY**
                                        **District Judge**