**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 3:18-cr-0037 |
| **AUBREY FRETT,** | ) |
| **Defendant.** | ) |

**ATTORNEYS:**

**Gretchen C.F. Shappert, United States Attorney**
**Everard E. Potter, AUSA**
**Nathan Brooks, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Richard Coughlin, Federal Public Defender**
**Kia Danielle Sears, AFPD**
**Gabriel J. Villegas, AFPD**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
    *For Aubrey Frett.*

## MEMORANDUM OPINION

**MOLLOY, J.**

**BEFORE THE COURT** is the United States of America's Motion to Reconsider (ECF No. 119) this Court's October 2, 2020 entry of judgment of acquittal on Count 1 of the Indictment. ECF No. 112. Defendant Aubrey Frett ("Frett") did not file a response.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2018, officers with the Virgin Islands Police Department ("VIPD") attempted to arrest Frett on a warrant at a location in St. Thomas, U.S. Virgin Islands. Frett

Case: 3:18-cr-00037-RAM-RM Document #: 128 Filed: 01/05/21 Page 2 of 11

*United States v. Frett*
Case No. 3:18-cr-0037
Memorandum Opinion
Page 2 of 11

fled, and the officers observed him throw away a black object. Frett was eventually apprehended. A search of Frett's person revealed that he was carrying marijuana and cocaine. After searching the area where officers observed Frett throw the object, officers discovered a handgun and magazine.

On March 21, 2019, the Grand Jury returned a four-count indictment (the "Indictment") charging Frett with the following offenses: (1) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); (2) possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1); (3) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and (4) possession of a firearm during drug trafficking in violation of 18 U.S.C. § 924(c).

On January 23-24, 2020, this matter was tried before a jury. With respect to the handgun recovered by the VIPD, officers testified that it was a 9mm Glock. The particular make and model of that firearm normally has a serial number displayed in three locations: First, a "metal plate" bearing the firearm's serial number is affixed to the lower receiver. *See Det. Velazquez Trial Test.*, ECF No. 95 at 81:22-23, 82:3. Second, the serial number is stamped into the upper receiver. Third, the serial number is stamped into the barrel. On the Glock recovered by the VIPD, the stamp on the lower receiver had been entirely removed. The serial numbers on the upper receiver and barrel, however, were both unmarred and entirely legible. *See Det. Velazquez Trial Test.*, ECF No. 95 at 91:23-25, 106:2-8.

At the close of the Government's case, Frett moved for a judgment of acquittal on all counts. The Court denied Frett's motion with respect to Counts Two through Four and took Frett's motion under advisement with respect to Count One, possession of a firearm with an

obliterated serial number. Thereafter, Frett rested without presenting any further witnesses or evidence.

On January 24, 2020, the jury returned a verdict of guilty on Counts Two and Three—the two drug charges. The jury was unable to reach a decision on Counts One and Four—the two firearms charges. The Court, thereafter, declared a mistrial with respect to Counts One and Four.

On March 13, 2020, Frett filed a motion requesting that the Court issue a decision on his motion for a judgment of acquittal on Count One, which the Court took under advisement at the close of the Government's case. (ECF No. 97.) Frett argued that, because the firearm in this matter still bore two unmarred serial numbers, it did not have a "removed, obliterated, or altered" serial number within the meaning of 18 U.S.C. § 922(k). Alternatively, Frett argued that there was insufficient evidence to establish that he knew the firearm's serial number was removed, obliterated, or altered.[1]

On October 2, 2020, this Court granted Frett's motion for a judgment of acquittal on Count 1 (ECF No. 112), and explained in the supporting memorandum opinion, *inter alia*, that although Section 922(k) does apply to firearms with multiple serial numbers, there was insufficient evidence for a reasonable jury to conclude that Frett had knowledge that the serial number in question was removed. *See United States v. Frett*, Case No. 3:18-cr-0037,

---

[1] On May 22, 2020, the Government moved to dismiss Counts One and Four without prejudice. ECF No. 106. On June 22, 2020 (ECF No. 109), Frett filed a Notice with the Court requesting that the Court first rule on the pending motion for judgment of acquittal before ruling on the Government's motion to dismiss. Frett, nonetheless, requests that the Court dismiss the Counts with prejudice. On October 20, 2020, the Court granted the Government's motion as to Count 4, and dismissed Count 4 without prejudice. ECF No. 120.

2020 U.S. Dist. LEXIS 183216 (D.V.I. Oct. 2, 2020) (docketed at ECF No. 111). Accordingly, the Court granted Frett's motion and dismissed Count 1 with prejudice.

On October 16, 2020, the Government filed a timely motion for reconsideration. This motion is now before the Court.

## II.  LEGAL STANDARD

"A party may file a motion asking the Court to reconsider its order or decision… based on: 1. Intervening change in controlling law; 2. Availability of new evidence, or; 3. The need to correct clear error or prevent manifest injustice." LRCi 7.3; *see* LRCr 1.2 ("In cases of general procedure not covered by these Rules, the Local Rules of Civil Procedure shall apply.").

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *United States v. Haynes*, 2020 WL 4043497, at *2 (D.V.I. July 16, 2020) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Here, "manifest injustice generally means that the Court overlooked some dispositive factual or legal matter that was presented to it." *Cabrita Point Dev., Inc. v. Evans*, 52 V.I. 968, 975 (D.V.I. 2009) (internal quotations omitted). Manifest injustice is further defined as "an eror in the trial court that is direct, obvious, and observable." *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.2d 342, 348 (6th Cir. 2004) (internal citations omitted). Ultimately, "most case[s]… use the term 'manifest injustice' to describe the result of plain error." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

## III.  DISCUSSION

Here, the Government moves for reconsideration on the third permissible ground: arguing that "the Court did not address the Government's argument that, based on the

*United States v. Frett*
Case No. 3:18-cr-0037
Memorandum Opinion
Page 5 of 11

statutory definition of a firearm and the corresponding distinction between the obliteration of the only visible serial number on the frame/receiver and the obliteration of other serial numbers on other gun parts, sufficient evidence existed to convict the defendant." ECF No. 119, at 6.

Specifically, the Government argues that the Court erred in finding that knowledge of the removed serial number could not be attributed to Frett because of the fact that the serial number in question was removed from the receiver of the firearm because a firearm's receiver is, in itself, considered a firearm under 18 U.S.C. § 921(a)(3)(B).[2] ECF No. 119, at 6-8. By extension, the Government contends that Frett therefore knew or should have known that the firearm in question was missing a serial number because it was missing a serial number on a component which was required by law to have a serial number – the firearm's receiver.

The Government's reasoning is flawed, and again does not account for the *mens rea* that it has failed to prove. The Government correctly asserts that there is evidence on the record supporting the inference that Frett knowingly possessed a firearm, and that the firearm was missing a serial number from its receiver. The Government further correctly points out the law – that a receiver is, in itself, a firearm under 18 U.S.C. § 921(a)(3)(B). However, this Court has already held that "there was a total absence of evidence regarding Frett's level of expertise or familiarity with firearms or that he knew or should have known

---

[2] Section 921(a)(3) provides:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive: (B) the frame ore receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.  Such term does not include an antique firearm.

that the firearm contained a metal plate beneath the frame that contained a third serial number." *Frett*, 2020 U.S. Dist. LEXIS, 183216, at *15. Explaining this one step further to accommodate the Government's renewed argument, the "total absence of evidence regarding Frett's level of expertise or familiarity with firearms" precludes the inference that Frett knew, or should have known, that the serial numbers that *were* visible were not on the firearm's receiver. *Id*. To that effect, there is no evidence that Frett was sufficiently familiar with firearms to precisely identify the receiver within a fully assembled firearm.

A conviction under Section 922(k) requires proving "not only knowing possession of the firearm, but also knowledge that the serial number on the firearm had been obliterated." *United States v. Haywood*, 363 F.3d 200, 206 (3d Cir. 2004); *see also United States v. Moore*, 54 F.3d 92, 101 (2d Cir. 1995) ("The defendant must know that the firearm had an altered serial number."). For the Government's argument to have merit, it necessarily requires that there be evidence on the record indicating that Frett have knowledge sufficient to know that the receiver, when incorporated into the fully assembled firearm, lacked a serial number. The Court returns to its previous Memorandum Opinion, that the conclusion the Government suggests "would require a reasonable jury to impermissibly pile inference upon inference: first, that Frett knew that a plate was missing from the firearm and second, that the missing plate contained a serial number[,]" and now third, that Frett knew that the serial numbers that *were* visible were not on the receiver. *Frett*, 2020 U.S. Dist. LEXIS, 183216, at *15. There is insufficient evidence on the record to support this conclusion, and this is where the Government's argument fails.

The Government posits that the Court will invite "bizarre results" by holding that a fully assembled firearm bearing multiple serial numbers but none on the receiver, differs meaningfully from the receiver of a hypothetical disassembled firearm bearing no serial number. ECF No. 119, at 7-8. The Government further asserts "there is no reason to believe that the separation of the frame/receiver from other pistol parts would increase or decrease the likelihood that a defendant knows that a serial number has been obliterated from the frame/receiver." *Id.* at 8.

The Court disagrees, and instead is far more troubled by the "bizarre results" invited by the Government's suggested interpretation. Taking the Government's reasoning to its terminus, the Government would propose to charge a defendant twice if a firearm were missing serial numbers on both the receiver and slide – one for the numbers missing from the slide of the assembled firearm, and a second charge for numbers missing from the receiver itself. By this reading, a fully assembled firearm is, in fact, two firearms: the receiver by itself, as well as the fully assembled weapon of which the receiver is merely a component. Rather, the proper reading of 18 U.S.C. § 921(a)(3) is one where an assembled firearm is a single chargeable unit, not the sum of separately chargeable parts. The Court need not, however, reach this "bizarre" potential for double-charging on a fully assembled firearm. Just as this Court previously held that there is insufficient evidence for a reasonable jury to conclude that Frett knew that the firearm was missing a serial number, there is simply no evidence on the record that would allow a reasonable jury to conclude that Frett knew that the serial numbers that *did* appear were not on the receiver.

The Government lastly appears to argue that Frett "had an adequate opportunity to observe the absence" of a serial number from the firearm's receiver, and argues that the instant circumstances are distinguishable from *United States v. Johnson*, 381 F. 3d 506, 509-10 (5th Cir. 2004) and more akin to *United States v. Sullivan*, 455 F.3d 248, 251 (4th Cir. 2006). ECF No. 119, at 9-10. These arguments ultimately rely on a defendant's opportunity to observe a firearm, such that knowledge of any illegal alterations may be attributed to him or her. The Court explored *Johnson* in its original memorandum opinion (ECF No. 111), and the Government offers *Sullivan* in support of its argument. *Sullivan*, however, is readily distinguishable. Unlike the instant case, the Fourth Circuit importantly found in *Sullivan* that *multiple* serial numbers had been removed from the firearm in question, as well as evidence of regular possession. 455 F.3d at 261.

"[A] conviction under § 922(k) requires not only knowing possession of a firearm, but also knowledge that the serial numbers on a firearm have been altered or removed, as of the time of the possession." *United States v. Hooker*, 997 F.2d 67, 72 (5th Cir. 1993). "Knowledge of defacement of the serial number may be inferred where the defendant has possessed the gun under conditions under which an ordinary man would have inspected the pistol and discovered the absence of a serial number." *Sullivan*, 455 F.3d at 261 (citing *Moore*, 54 F.3d at 101). This knowledge was imputed to Sullivan due to a finding that "because Sullivan regularly carried and possessed the weapon, he would have been expected to have examined the weapon and discovered, at least, that the primary serial number had been obliterated." *Id.*

Notably, however, the Government does not claim to have offered any evidence that Frett 'regularly carried and possessed the weapon,' but merely that his DNA appeared on the firearm. ECF No. 119, at 2. There is a sizeable gap between evidence demonstrating that a defendant regularly carried and possessed a weapon, and evidence that merely demonstrates that Frett, at one point, likely touched the weapon for some indeterminate amount of time. While the evidence appears to be sufficient to find that Frett possessed the firearm in question at one point, "[u]nder these circumstances, the Court cannot conclude that the inference that Frett knew about the Glock's missing serial number is one a rational jury could make." *Frett*, 2020 U.S. Dist. LEXIS, 183216, at *15. And all of this aside, the Court already addressed the question of whether Frett had a sufficient opportunity to examine the firearm and realize it was missing a serial number, or that he had sufficient familiarity to make that determination. *See id.* Motions for reconsideration are not for re-litigating a previously raised argument. Accordingly, the Court will maintain its original holding and deny the Government's motion to reconsider.

Moreover, the Court has significant concerns over its ability to reconsider the entry of a judgment of acquittal. The Supreme Court of the United States has repeatedly held that, "although retrial is sometimes permissible after a mistrial is declared but no verdict or judgment has been entered, the verdict of acquittal foreclose[s] retrial and thus bar[s] appellate review." *U.S. v. Martin Linen Supply Co.*, 430 U.S. 564, 576 (1977) (quoting *U.S. v. Wilson*, 430 U.S. 332, 348 (1975); *but see* "Thus a postverdict dismissal of an indictment after a jury rendered a guilty verdict has been held to be appealable by the United States because

restoration of the guilty verdict, and not a new trial, would necessarily result if the Government prevailed." *Martin Linen Supply*, 430 U.S. at 570.

It is unclear from existing case law whether this rationale, terminating a defendant's jeopardy upon the entry of a judgment of acquittal, extends to a district court's ability to reconsider its own judgment of acquittal. The limited case law this Court has uncovered indicates that "double jeopardy does not bar a district court from revising a ruling on a motion for acquittal when that ruling is tentative or rendered subject to reconsideration." *U.S. v. Byrne*, 203 F.3d 671, 674 (9th Cir. 2000). In *Byrne*, "the district judge made it clear that her ruling was not final in the course of the same colloquy in which she announced the decision." *Id*. at 675. The *Byrne* Court went on to hold that "[b]ecause the district judge made clear, in the same colloquy in which she issued her ruling on the motion for acquittal, that the motion was subject to reconsideration, the Double Jeopardy Clause was not violated." *Id.* The *Byrne* line of reasoning holds that a defendant's jeopardy is not terminated upon the issuance of a *tentative* judgment of acquittal, which is itself logically sound.

However, this Court expressed no such reservations here – the judgment of acquittal entered at ECF No. 112 was entered unequivocally and without any doubt as to its finality. It would appear that the *Byrne* reasoning does not apply in this circumstance, and the Court can find no support for the proposition that it may reconsider a final judgment of acquittal following any verdict aside from one of guilt. Nevertheless, the Court need not reach this issue, as the Government's motion fails to justify reconsideration on the merits.

### IV.     CONCLUSION

For the reasons set forth above, the Government has failed to demonstrate manifest injustice in the Court's October 2, 2020 entry of a judgment of acquittal (ECF No. 112). The Government's motion to reconsider will therefore be denied.

**DATED:** January 5, 2021

*/s/ Robert A. Molloy*
Robert A. Molloy
District Judge